UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DEMETRIUS LAGENE CHAFFORD, | No. C 09-1574 PJH (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING CERTIFICATE OF APPEALABILITY** |
| vs. | |
| ANTHONY HEDGPETH, Warden, | |
| Respondent. | |

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the court. Petitioner responded with a traverse. For the reasons set out below, the petition is denied.

**BACKGROUND**

On December 8, 2005, a jury found petitioner guilty, in count one, of first-degree murder, *see* Cal. Penal Code § 187(a), and, in count two, possession of a firearm by a felon, *see* Cal. Penal Code § 12021(a)(1). The jury also found true an allegation that petitioner personally discharged a firearm during the commission of the murder, *see* Cal. Penal Code §§ 12022.5, 12022.53. On February 17, 2006, the court struck, at the prosecutor's request, the conviction on count two and two prior conviction allegations. Respondent's Exhibit ("Resp. Exh.") J9 at 1354-55. The court sentenced petitioner to a total term of fifty years to life in prison, consisting of twenty-five years to life for first degree murder, and a consecutive term of twenty-five years to life for the gun enhancement. Resp. Exh. J9 at 1358. On September 21, 2007, the California Court of Appeal affirmed the

judgment. *People v. Chafford*, 2007 WL 2751878 (Cal. App. 1 Dist. 2007). On January 3, 2008, the California Supreme Court summarily denied a petition for review. Resp. Exh. G. Petitioner filed a habeas corpus petition in the California Supreme Court that was summarily denied on March 11, 2009. Resp. Exh. I.

The relevant facts from the California Court of Appeal's opinion can be summarized as follows: Petitioner, McKinley Williams, and James Pierce sold drugs together from a house in West Oakland. *Chafford*, 2007 WL 2751878 at *1. Williams was later found dead in the driver's seat of a car, killed by a single gunshot fired less than three inches from his head. *Id.* Petitioner told Pierce, and later a cellmate, Andre Thompson, that he shot Williams because he suspected that he was working as a police informant. *Id.* at *2. Both Pierce and Thompson testified to this effect at petitioner's trial. *Id.*

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *see Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application

of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

In considering potential state court error, this court looks to the "last reasoned decision of the state court as the basis of the state court's judgment." *See Franklin v. Johnson*, 290 F.3d 1223, 1233 n. 3 (9th Cir. 2002). However, when presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state-court decision is objectively unreasonable. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). This review is not a "de novo review of the constitutional issue"; rather, it is the only way a federal court can determine whether a state-court decision is objectively unreasonable where the state court is silent. *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "[W]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

## DISCUSSION

As grounds for federal habeas relief, petitioner asserts that: (1) his trial counsel was ineffective in several different ways; (2) his sentence was imposed in violation of *Cunningham v. California*, 549 U.S. 270 (2007); and (3) the prosecution committed misconduct.

3

## I.     Ineffective Assistance of Counsel

Petitioner claims that his trial counsel was ineffective for:  (i) failing to investigate and/or present a defense; (ii) failing to properly object to evidence of uncharged misconduct, improperly stipulating to uncharged misconduct, and failing to request a limiting instruction regarding uncharged misconduct; (iii) failing to properly object to James Pierce's testimony; (iv) failing to object to prosecutorial misconduct; (v) failing to object at sentencing; (vi) knowingly introducing perjured testimony; (vii) failing to object to the admission of photographic evidence; and (viii) failing to properly instruct the jury on the elements of the offense.  Petitioner also claims (ix) that his appellate counsel was ineffective for failing to raise these claims on direct appeal.

In order to succeed on an ineffective assistance of counsel claim, the petitioner must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which requires him to show deficient performance and prejudice.  Deficient performance requires a showing that trial counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms.  *See Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  To establish prejudice, petitioner must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *See Strickland*, 466 U.S. at 694.  If a petitioner cannot establish that defense counsel's performance was deficient, it is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the *Strickland* test.  *See Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

Because the California Supreme Court summarily denied the petition with no explanation, this court must conduct an independent review of the record to determine whether the state court decision denying petitioner's claim of ineffective assistance of counsel is objectively unreasonable.  *See Delgado*, 223 F.3d at 982.

**(i) Failure to Investigate/Present a Defense**

Petitioner claims that his trial counsel was ineffective for failing to conduct a reasonable pretrial investigation, failing to investigate all defenses, and failing to present a

4

defense. Petition for Writ of Habeas Corpus ("Hab. Pet.") at 2, claim ("cl.") 1.

Petitioner contends that even though the defense "depended on witnesses (*sic*) testimony," trial counsel did not hire an investigator or interview any alibi or potential character witnesses. *Id.* at 5-6, cl. 1. Petitioner identifies one witness, Jamelia Richards, who he states was willing to testify regarding a statement she gave to law enforcement. *Id.* at 7, cl. 1. Petitioner cites to the investigating officer's notes of an interview conducted with Richards, which he claims contradict the testimony of the prosecution's key witness, James Pierce. Hab. Pet. Exhibit ("Exh.") I. The officer's notes indicate that Richards did not recall the shooting, nor had she heard of petitioner being involved in a shooting, but that she "did not hang out with those guys to know what they were doing." *Id.*

Petitioner states that he suggested to counsel that Richards be subpoenaed, but counsel responded that, "we'll wait until trial to use her." Hab. Pet. at 7, cl. 1. At trial, counsel cross-examined the investigating officer about the interview he conducted with Richards, but did not subpoena her to testify as a witness for the defense. Resp. Exh. J8 at 1161-62, J9 at 1189. Counsel's strategic decision not to call Richards as a witness was reasonable as neither the investigating officer's notes nor his cross-examination indicated that Richards could provide any favorable testimony, let alone an alibi. Defense counsel is empowered to make such strategic decisions, so long as they are reasonable and informed. *See Jennings v. Woodford*, 290 F.3d 1006, 1014 (9th Cir. 2002). Petitioner fails to explain how Richards could have provided him with a defense, or helped his case in any way. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Moreover, there is nothing in the record to establish that Richards was willing to testify in the first instance. Where there is no evidence that an individual will testify at trial, defense counsel's failure to call the witness does not constitute ineffective assistance of counsel. *See United States v. Harden*, 846 F.2d 1229, 1231-32 (9th Circuit 1988).

Petitioner also contends that counsel was ineffective for failing to call any character

witnesses, but offers only the vague assertion that, had counsel conducted a proper investigation, he should have found several people to testify that petitioner was a "responsible, caring, loving man devoted to his family." Hab. Pet. at 5-6, cl. 1. In light of the fact that the defense case was not dependent on favorable evidence of the petitioner's character, counsel's decision not to present character witnesses can be regarded as reasonable trial strategy, and therefore does not constitute ineffective assistance of counsel. *Strickland*, 466 U.S. at 690-91. In any case, petitioner fails to provide the names of any witnesses that he wanted to provide character testimony. Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief. *See James v. Borg*, 24 F. 3d 20, 26 (9th Cir. 1994).

Counsel's decisions not to call Richards as a witness or to present any character evidence can be regarded as reasonable strategic choices and do not constitute deficient performance. *Id.*

**(ii) Evidence of Uncharged Misconduct**

Petitioner claims that counsel was ineffective for failing adequately to object to evidence of uncharged misconduct, improperly stipulating to uncharged misconduct, and failing to request a limiting instruction regarding uncharged misconduct. Hab. Pet. at 2.

The prosecution attempted to bolster the credibility of their witnesses by offering evidence that petitioner was involved in four unrelated shootings, including two homicides. Resp. Exh. J1 at 9. Contrary to petitioner's assertion, counsel did object to the admission of this evidence and moved *in limine* to exclude evidence of the uncharged incidents. *Id.* at 9-10, 64-65. Counsel repeatedly objected to testimony concerning the incidents and preserved the issue for appeal. *Id.* at 9-16, 57-65, 71-73, 165-170, 215-221, 226-243. Nevertheless, petitioner contends that counsel should have filed a suppression motion, or a 995[1] motion, to exclude evidence of the uncharged acts. Hab. Pet. at 2, cl. 1. Trial counsel's strategic decision to try and exclude the evidence through a motion *in limine*,

---

[1] Motion to set aside the indictment or information. Cal. Penal Code § 995.

rather than some other means, was a reasonable tactical choice that is entitled to deference from this court, and does not constitute deficient performance. *See Strickland*, 466 U.S. 668, 689-90.

Petitioner also argues that counsel improperly stipulated to evidence of uncharged misconduct. Hab. Pet. 2, cl. 1. During trial, the parties stipulated to the dates and locations of the four shootings, and to the fact that shell casings found at one scene matched the gun recovered in this case. Resp. Exh. J1 at 216. The record indicates that trial counsel entered into the stipulation to limit and maintain some amount of control over the amount and type of testimony that would come in regarding the uncharged incidents. *Id.* at 216-17. Petitioner acknowledges that the stipulation regarding the uncharged conduct was entered into "to let the jury know they occurred not who supposedly done them," and that counsel "made a tactical decision" that the stipulated evidence was so minimal that it would not be used by the jury for an improper purpose, would not be unduly prejudicial, confuse the issues, or mislead the jury. Hab. pet. 2, 3, cl. 1. Petitioner offers no support for the assertion that the jury actually used the information for an improper purpose, that it prejudiced him in any way, or that it confused the issues or misled the jury. Counsel's decision was the product of "reasonable professional judgment" that is entitled to deference from this court, and does not constitute deficient performance. *See Strickland*, 466 U.S. at 689-90.

Petitioner further contends that counsel was ineffective for failing to make certain that the jury was instructed that it could consider evidence of uncharged misconduct only for the limited purpose of supporting the credibility of their witnesses. Hab. Pet. at 3, cl. 1. Again, petitioner acknowledges that counsel "made a conscious, deliberate, tactical choice" not to request the instruction. *Id.* The record reflects that counsel specifically informed the court that he was not requesting an instruction on other crimes because reference to them was properly limited by the court's rulings. Resp. Exh. J7 at 1016-17. Petitioner provides no support for the argument that counsel's decision not to request a limiting instruction on uncharged misconduct was unreasonable in any way. Counsel's tactical decision not to

7

request a limiting instruction on uncharged misconduct does not constitute deficient performance.  *See Strickland*, 466 U.S. at 689-90.

### (iii) James Pierce's Testimony

Petitioner claims that counsel was ineffective for failing properly to object to James Pierce's testimony.  Hab. Pet. at 2, cl. 1. During Pierce's testimony, he was repeatedly asked about the meaning of certain slang terms used by petitioner during telephone calls that he made from the jail.  Resp. Exh. J5 at 787-94, 796, 798-800, 801, 806.  Counsel objected to many of the questions posed to Pierce, arguing that he was interpreting petitioner's statements and speculating as to their meaning.  *Id.* at 792, 796-99, 803-04, 810.  The trial court overruled most of the objections and allowed Pierce to explain the conversations based on his personal knowledge.  *Id.* at 797-800.  The Court of Appeal found that Pierce's testimony was in the nature of an expert witness, but that the trial court never expressly qualified him to testify as an expert because counsel never challenged his qualifications to provide expert testimony.  *Chafford*, 2007 WL 2751878 at *6. Nevertheless, the Court of Appeal concluded that the trial court reasonably could have qualified Pierce as an expert based on his experience selling drugs on the streets of Oakland.  *Id.*

Petitioner argues that counsel should have challenged Pierce's qualifications to provide expert testimony regarding the meaning of slang terms used by petitioner.  Hab. Pet. 4, cl. 1.  Assuming *arguendo* that counsel's performance was deficient for failing to do so, there is no prejudice as petitioner fails to demonstrate a reasonable likelihood that the outcome of the proceeding would have been different had counsel challenged Pierce's expert qualifications.  "A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates."  Cal. Evid. Code § 720(a).  The court agrees with the California Court of Appeal's determination that, based on the evidence before the trial court regarding Pierce's experience selling drugs on the streets of Oakland, he could easily have qualified as an expert in the slang terms used by people who live and work in

8

that environment.  As there was enough evidence before the court to qualify Pierce as an expert, any objection to his qualifications to provide expert testimony would have been futile.

There is no prejudice as petitioner fails to show a reasonable likelihood that the trial court would have rejected Pierce's qualification as an expert if counsel had raised the proper objection.  *See Strickland*, 466 U.S. at 687.

### (iv) Failure to Object to Prosecutorial Misconduct

Petitioner contends that counsel was ineffective for failing to object to the prosecutor's comments during closing argument.  Hab. Pet. at 4, cl. 1.  Petitioner argues that, during rebuttal, the prosecutor committed prejudicial misconduct by diminishing the constitutional standard for reasonable doubt.  Hab. Pet. at 4, cl. 1.  During rebuttal, the prosecutor stated as follows:

> Now, reasonable doubt, I want to touch on that.  Reasonable doubt was presented to you by Mr. Keller as some type of insurmountable burden.  It's not. It's not only the same burden that's used in this case, it's the same burden or standard of proof that's used in every criminal court in California and in the country.  People are convicted beyond a reasonable doubt every day, so it is not this great insurmountable burden.
>
> It's built into the system that we have ... and as such, it's always used as a defense.  Crime wasn't proven to you beyond a reasonable doubt.  That's always a defense to any criminal case.  It's kind of like you make the analogy: you can't have Thanksgiving without turkey.  Well, you can't have a criminal trial without the defense being reasonable doubt.  That's just the way it is. It's built right into the system.
>
> Ladies and gentlemen, reasonable doubt is there for a reason.  It's there to protect the innocent; it is not meant to be used as a legal loophole for the guilty.  Remember that when you're discussing reasonable doubt.

*Chafford*, 2007 WL 2751878 at *6-7.

On direct appeal, petitioner argued that the prosecutor committed misconduct by misstating and lowering the burden of proof.  *Id.* at 7.  The Court of Appeal rejected this argument, finding that the prosecutor did not lower the burden of proof, but rather explained that the beyond-a-reasonable-doubt standard was not so high that it could not be overcome.  *Id.*  The court agrees with the state court's determination that there was no prosecutorial misconduct. "[I]mproprieties in counsel's arguments to the jury do not

9

constitute reversible error unless they are so gross as probably to prejudice the defendant...." *See United States v. Tucker*, 641 F.3d 1110, 1121 (9th Cir. 2011). Here there was no impropriety as the challenged statements did not misstate the law and made it clear that the burden to prove guilt beyond a reasonable doubt remained with the State. Because there was no prosecutorial misconduct, it stands to reason that counsel was not ineffective for making a pointless objection. "Failure to raise a meritless argument does not constitute ineffective assistance." *See Moormann v. Ryan*, 628 F.3d 1102, 1109-10 (9th Cir. 2010) *quoting Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985).

Counsel was not ineffective for failing to object to the prosecutor's comments during closing argument.

### (v) Failure to Object at Sentencing

Petitioner claims that counsel was "ineffective at sentencing", but fails to specify what objections should have been raised. Hab. Pet. at 2, cl. 1. Nor did petitioner raise any claim of sentencing error on direct appeal or in his petition for review to the California Supreme Court, and his state habeas petition raises the same general claim that counsel was ineffective at sentencing. However, based on his second claim, it appears that petitioner is arguing that counsel was ineffective for failing to object that the sentences imposed violated his Sixth Amendment right to a jury trial   Hab. Pet. at 1, cl. 2. As discussed, *infra* in Section II, there is no Sixth Amendment violation, therefore counsel was not ineffective for failing to raise a meritless argument. *See Moormann*, 628 F.3d at 1110 (citation omitted).

### (vi) Perjured Testimony

Petitioner claims that counsel was ineffective for knowingly introducing perjured testimony. Hab. Pet. at 2, cl. 1. The record reflects that the defense called only one witness, Andrew Walker, an investigator with the Public Defender's Office, to testify about his role in the case. Resp. Exh. J9 at 1222. It's unlikely that petitioner is referring to this witness, rather, based on his third claim, it appears that he is arguing that his counsel was ineffective for failing to object to the prosecution's knowing introduction of perjured

10

testimony. Contrary to petitioner's assertion, counsel raised this specific issue in a pretrial motion. *See infra*, Section III(i); Resp. Exh. A2 at 240-250. Counsel's argument convinced the prosecution to enter into a stipulation to correct any testimony that may have been false. *Id.* Because the prosecution took the proper steps to correct any potentially false testimony, counsel no longer had a valid argument that the prosecution was introducing perjured testimony, and therefore counsel was not ineffective for failing to raise a meritless claim. *See Moormann*, 628 F.3d at 1110 (citation omitted).

### (vii) Admission of Photographic Evidence

Petitioner also claims that counsel was ineffective for failing to object to the admission of photographs depicting a Smith and Wesson handgun. Hab. Pet. at 4, cl.1. This contention lacks merit. Even assuming that counsel's failure to object to the admission of the photographs constituted deficient performance, there is no prejudice as petitioner fails to show that there is a reasonable probability that the result of the proceeding would have been different had the photographs been excluded. *See Strickland*, 466 U.S. at 694.

### (viii) Jury Instructions

Petitioner claims that counsel was ineffective for not submitting proper instructions and for failing to object to the improper instructions proposed by the prosecution. Hab. Pet. 5, cl. 1. This contention also lacks merit. Petitioner fails to identify those instructions that should have been requested or those that were improperly given. Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief. *See Borg*, 24 F.3d at 26. Even assuming that counsel's failure to request, or object to, certain jury instructions constituted deficient performance, petitioner's bare allegation of instructional error is insufficient to establish prejudice under *Strickland* because he fails to demonstrate a reasonable probability that the result of the proceeding would have been different absent his counsel's alleged errors. *See Strickland*, 466 U.S. at 694.

### (ix) Ineffective Assistance of Appellate Counsel

Petitioner's final claim is that his appellate counsel was ineffective for failing to raise, on direct appeal, the ineffective assistance of trial counsel. Hab. Pet. at 2, cl. 1. The Due

11

Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. *See Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant. *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. *Id.* at 751-52.

For the reasons discussed in Sections (i) through (viii), *supra*, petitioner was not denied the effective of assistance of counsel during trial. Because the claims raised by petitioner lack merit, appellate counsel's failure to raise them on appeal was neither deficient nor prejudicial under the *Strickland* standard. *See Rhoades v. Henry*, 638 F.3d 1027, 1036 (9th Cir. 2011). Consequently, petitioner did not receive ineffective assistance of counsel on appeal. The state court's decision denying relief on this claim was not objectively unreasonable.

**(x) Conclusion**

Based on the court's independent review of the record, the state court's decision denying petitioner's claims of ineffective assistance of counsel is not objectively unreasonable. *See Delgado*, 223 F.3d at 982.

**II. *Cunningham* Claim**

Petitioner next argues that the upper term sentences imposed for his first-degree murder conviction and for the personal discharge of a firearm enhancement violated his Sixth Amendment right to a jury trial because they were based on facts found by a judge and not proven to a jury beyond a reasonable doubt. Hab. Pet. at 2, cl. 2.

In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. In *Blakely v. Washington*, 542 U.S. 296, 303 (2004), the Supreme Court explained that "the 'statutory

maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.* (emphasis in original). Therefore "the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum." *See Cunningham v. California*, 549 U.S. 270, 288-89 (2007). In *Cunningham*, the Supreme Court, citing *Apprendi* and *Blakely*, held that California's Determinate Sentencing Law violates a defendant's right to a jury trial to the extent that it contravenes "*Apprendi's* bright-line rule: Except for a prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *See id. quoting Apprendi*, 530 U.S. at 490.

Petitioner's claim lacks merit. At sentencing, the trial court imposed a total term of 50 years to life, 25 years to life for first-degree murder, and a consecutive term of 25 years to life for the gun enhancement that was found true by the jury. Resp. Exh. J9 at 1358. In a non-death penalty case, the statutory maximum sentence a judge may impose for first-degree murder is life without the possibility of parole, and a consecutive term of 25 years to life is required for the personal discharge of a firearm enhancement. *See* Cal. Penal Code §§ 190(a), 12022.53(d). Habeas relief is not warranted because the trial court could not have increased petitioner's sentence beyond the statutory maximum of life without parole, therefore *Apprendi* and *Cunningham* are not implicated.

### III.    Prosecutorial Misconduct

Petitioner's final claim is that the prosecution committed misconduct by: (i) knowingly presenting the perjured testimony of James Pierce; (ii) misleading the jury by presenting evidence of uncharged misconduct; and (iii) trivializing the reasonable doubt standard during closing argument. Hab. Pet. 2, cl. 3.

**(i) James Pierce's Testimony**

Petitioner claims that the prosecution knowingly used the perjured testimony of James Pierce at both the preliminary hearing and the trial to obtain the conviction. Hab. Pet. at 2 cl. 3.

13

A conviction obtained through the use of testimony which the prosecutor knows or should know is perjured must be set aside if there is any reasonable likelihood that the testimony could have affected the judgment of the jury. *See United States v. Agurs*, 427 U.S. 97, 103 (1976). The result is the same when the prosecutor, although not soliciting false evidence, allows it to go uncorrected when it appears. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959). To prevail on a claim based on *Agurs/Napue*, the petitioner must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material. *See United States v. Zuno–Arce*, 339 F. 3d 886, 889 (9th Cir. 2003) (citation omitted).

The only specific allegation raised by petitioner references a defense motion to compel disclosure of attorney client communications. Hab. Pet. at 2, cl. 3. The motion reveals an inconsistency between Pierce's preliminary hearing and trial testimony regarding whether he was offered leniency on pending felony charges in exchange for his testimony. Resp. Exh. A2 at 240-250. At trial, Pierce testified that he could not recall whether his attorney told him that if he cooperated he should be able to keep him out of prison. Resp. Exh. J9 at 781. However, the parties later stipulated that the prosecution had told Pierce, in the presence of his attorney, that so long as he testified truthfully, he could assume that he would stay out of prison on his pending charges. Resp. Exh. J7 at 1221.

Based on this inconsistency, petitioner argues that the prosecution deliberately used Pierce's perjured testimony to secure the conviction. Hab. Pet. at 2, cl. 3. This argument lacks merit. Even if the inconsistency constitutes perjury, the prosecution took steps to correct the possible falsity of the statement by entering into the stipulation. Pierce was cross-examined on his statement and defense counsel made certain during closing argument that the jury was aware of his possible motivation for testifying against petitioner. Resp. Exh. J7 at 858-66, J9 at 1296-1303.

Petitioner fails to identify any other portion of Pierce's testimony that the prosecution knew was false and allowed to go uncorrected. Instead, petitioner cites to the entirety of

14

Pierce's testimony from both the preliminary hearing and the trial, and to his counsel's closing argument describing "all the false evidence prosecution witness James Pierce testified to." Hab. Pet. at 3-4, cl. 3. Petitioner's argument is directed toward Pierce's credibility, which had already been challenged at trial through cross-examination and during counsel's closing argument. Matters of credibility are properly entrusted to the jury. *See United States v. Gudino*, 432 F.2d 433, 434 (9th Cir. 1970).

Petitioner fails to establish that the conviction was obtained through the prosecution's knowing use of perjured testimony. *See Napue*, 360 U.S. at 269.

**(ii) Uncharged Misconduct**

Petitioner next claims that the prosecution committed misconduct by presenting evidence of uncharged bad acts. Hab. Pet. at 2, cl. 3. As discussed in Section I(ii), *supra,* in Section I(ii) the prosecution was allowed to present evidence, over the defense's objection, that petitioner was involved in four unrelated shootings. Resp. Exh. J1 at 9. Thereafter, the parties stipulated to the dates and locations of the four incidents, and to the fact that shell casings found at one scene matched the gun recovered in this case. Resp. Exh. J1 at 216. Petitioner claims that the admission of this evidence prejudiced his defense by "portraying him as a serial killer in front of the jury." In light of the trial court's determination that the evidence was admissible, petitioner's claim that the prosecution committed misconduct by presenting this evidence lacks merit.

**(iii) Statements During Closing Argument**

Petitioner's final claim is essentially the same as his claim of ineffective assistance based on his counsel's failure to object to the prosecutor's comments during closing argument. As discussed in Section I(iv), *supra*, the prosecutor's statements during closing did not constitute misconduct as the challenged statements correctly stated the law and did not lower the burden of proof.

**(iv) Conclusion**

Based on the court's independent review of the record, the state court's decision

15

denying petitioner's claims of prosecutorial misconduct is not objectively unreasonable. *See Delgado*, 223 F.3d at 982.

**IV.  Appealability**

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability in the ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

To obtain a COA, petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Section 2253(c)(3) requires a court granting a COA to indicate which issues satisfy the COA standard. Here, the court finds that only one issue presented by petitioner in his petition meets the above standard and accordingly GRANTS the COA as to that issue. *See generally Miller-El v. Cockrell*, 537 U.S. at 322. That issue is:

(1) whether trial counsel was ineffective for failing to challenge James Pierce's qualifications to provide expert testimony regarding the meaning of slang terms used by petitioner.

Accordingly, the clerk shall forward the file, including a copy of this order, to the Court of Appeals. *See* Fed. R. App. P. 22(b); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997).

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.

A Certificate of Appealability is **GRANTED**. *See* Rule11(a) of the Rules Governing Section 2254 Cases.

The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 4, 2013.

_____
PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.09\CHAFFORD1574.HC.wpd